UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH PALMER,

    Petitioner,

v.

                                            Case No. 10-14391

                                          Honorable Patrick J. Duggan

GREG McQUIGGIN,

    Respondent.
_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Joseph Palmer ("Petitioner"), a state prisoner currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for assault with intent to commit murder, Michigan Compiled Laws § 750.83, felon in possession of a firearm, Michigan Compiled Laws § 750.224f, and possession of a firearm during the commission of, or attempt to commit, a felony, Michigan Compiled Laws § 750.227b. The State has filed a motion for summary judgment, arguing that the petition is barred by the statute of limitations. The Court agrees, and accordingly grants the State's motion.

### I. Factual and Procedural Background

Petitioner was tried with a co-defendant, Myron Jackson, in connection with a

shooting that occurred during March 2005. The Court recites the facts set forth by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

> This case arises from an acquaintance shooting, from defendants' vehicle to another, in which the victim, Aaron Bartlett, was shot four times in the head when his car was stopped at an intersection in Detroit. Bartlett testified that he had previously been a friend of defendants for about five years. In 2004, Bartlett and defendant Palmer purchased a car together, and thereafter had several disagreements concerning possession and use of the vehicle. During one disagreement, a physical fight erupted between Bartlett and defendant Palmer, and a separate fight erupted between Bartlett's cousin Marco and defendant Jackson. After the fight, Bartlett took the car and left. Bartlett had no communication with defendants after this incident. He had not seen defendant Jackson; he had seen defendant Palmer, but did not speak with him.
>
> On March 1, 2005, at about 8:30 p.m., Bartlett and Rolland Roach stopped at a party store on Oakland and Clay streets in Detroit. Bartlett and Roach testified that defendant Jackson was also at the store, and Bartlett briefly conversed with him. Roach testified that defendant Jackson asked about Marco. As Bartlett was conversing with defendant Jackson, defendant Palmer got out of the passenger side of a brown or gold minivan and walked toward Bartlett's car. Bartlett and Roach testified that Bartlett asked defendant Palmer if they were going to fight. Defendant Palmer allegedly denied wanting to fight, and said, "I got it." "I'll handle it." Defendants walked back to the minivan, with defendant Jackson getting into the driver's side. Bartlett and Roach left.
>
> At about 10:00 p.m., Bartlett was driving around the area of Oakland and Clay with four friends. Bartlett's girlfriend, Shanara King, was asleep in the front seat, Roach was seated in the rear passenger side, "Brandon" was seated in the rear driver's side, and Devon Lockridge was seated in between Roach and Brandon. Bartlett testified that when he stopped in the left turn lane at a traffic light, the same minivan that he saw defendants in earlier stopped alongside the driver's side of his car. Bartlett and Roach identified defendant Jackson as the driver of the minivan. Roach testified that the minivan was so close to Bartlett's car that Bartlett would not have been able to open his door. Bartlett and Roach testified that defendant Palmer, who was in the front passenger seat, extended his arm out of the window, and fired a gun. Roach stated that defendant Palmer fired about six gunshots. The first shot broke Bartlett's driver's side window. Bartlett was shot four times in the head, and

2

once in the shoulder.

*People v. Palmer*, No. 265289, 2007 Mich. App. LEXIS 815, at *1-4 (Mich. Ct. App. Mar. 22, 2007).

After a jury trial in Wayne County Circuit Court, Petitioner was found guilty of the above-listed offenses. On September 9, 2005, Petitioner was sentenced to two years in prison for felony-firearm, followed by concurrent terms of twenty-three to sixty years for assault with intent to commit murder and two to five years for the felon-in-possession conviction.

Petitioner filed an appeal as of right, arguing that: (1) the prosecution failed to produce two endorsed witnesses; (2) the trial court should have instructed the jury on a lesser-included offense; (3) trial counsel was ineffective; (4) the prosecutor should not have been permitted to introduce evidence of a prior conviction; (5) the opinions of prospective jurors regarding the presumption of innocence tainted the entire jury pool; and (6) the prosecutor impermissibly shifted the burden of proof to Petitioner by requiring him to provide an explanation for missing witnesses. The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *Palmer*, No. 265289 (Mich. Ct. App. Mar. 22, 2007).

Petitioner filed a *pro se* application for leave to appeal with the Michigan Supreme Court, but his application was denied in an order dated July 30, 2007. *People v. Palmer*, 479 Mich. 864, 735 N.W.2d 245 (Mich. 2007). Petitioner did not seek a writ of certiorari in the United States Supreme Court.

Petitioner mailed a motion for relief from judgment to the trial court on April 10,

2008, requesting either a new trial or re-sentencing. On September 8, 2008, the trial court denied the motion on the basis that Petitioner had raised his new trial claims in the Court of Appeals and had not shown "good cause" under Michigan Court Rule 6.508(D)(3) for failure to raise his sentencing claims on appeal. The trial court also found no merit in Petitioner's claims regarding appellate counsel and the scoring of sentencing guidelines.

On September 21, 2009, Petitioner mailed a delayed application for leave to appeal to the Michigan Court of Appeals. The court dismissed his application because it was not filed within one year of the trial court's decision, as required by Michigan Court Rule 7.205(F)(3).[1] *People v. Palmer*, No. 294275 (Mich. Ct. App. Nov. 18, 2009). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied this application in an order dated July 26, 2010. *People v. Palmer*, 487 Mich. 851, 784 N.W.2d 209 (Mich. 2010).

Petitioner asserts that he mailed his habeas petition to this Court on October 27, 2010. The petition raises the following claims: (1) that Petitioner was denied his rights to a fair trial, to confront the witnesses against him, and to due process of law by the prosecution's failure to produce two witnesses at trial and the trial court's failure to determine whether the prosecution exercised due diligence in failing to produce the witnesses; (2) that Petitioner was denied his right to a fair trial by the trial court's refusal to instruct the jury on the lesser offense of assault with intent to commit great bodily harm less than murder; (3) that the sentencing guidelines were scored incorrectly and enhanced

---

[1] This Rule recently was amended to require prisoners to file a delayed application for leave to appeal within six months of the date of the judgment or order being appealed.

on the basis of facts that were neither admitted nor proved to a jury; and (4) that the pretrial identification procedure was suggestive, unreliable, and improper. The State has moved for summary judgment and dismissal of the petition, arguing that these claims are barred by the one-year statute of limitations.

## II. Discussion

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitation for state prisoners to file federal habeas corpus petitions. 28 U.S.C. § 2244(d)(1). The period runs from the latest of four specified dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The limitation period is tolled, however, "during the pendency of a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim.'" *Wall v. Kholi*, --- U.S. ----, 131 S. Ct. 1278, 1283 (2011) (quoting 28 U.S.C. § 2244(d)(2)).

The statute of limitations began to run in this case when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking

such review." 28 U.S.C. § 2244(d)(1)(A). "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009). A petition for writ of certiorari to review a judgment entered by a state court of last resort must be filed within ninety days after entry of the judgment. Sup. Ct. R. 13.1. Petitioner appealed his convictions to the Michigan Supreme Court, but did not apply for a writ of certiorari in the United States Supreme Court. Thus, his conviction became final on October 28, 2007, ninety days after the Michigan Supreme Court denied leave to appeal on direct review. *See Jimenez*, 555 U. S. at 120, 129 S. Ct. at 686; *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

The one-year limitation period began running on October 29, 2007, and it continued to run until April 10, 2008, when Petitioner mailed his motion for relief from judgment to the trial court. The limitation period was tolled from April 10, 2008, through September 8, 2008, the date on which the trial court denied Petitioner's motion. *See* § 2244(d)(2). The limitation period is generally tolled while a post-conviction motion and subsequent appeals are pending in state court, *Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S. Ct. 2134, 2138 (2002), but an application for state post-conviction review must be "properly filed" for it to toll the limitation period. § 2244(d)(2). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 364 (2000). These rules usually prescribe, among other things, the time limits for delivery. *Id.* at 8, 121 S. Ct. at 364. "[O]nly a *timely* appeal tolls AEDPA's 1-year limitations period for the

6

time between the lower court's adverse decision and the filing of a notice of appeal in the higher court." *Evans v. Chavis*, 546 U.S. 189, 197, 126 S. Ct. 846, 852 (2006) (emphasis in original). Petitioner's application for leave to appeal to the Michigan Court of Appeals on collateral review was dismissed as untimely. Thus, the limitation period was not tolled after the trial court's denial of Petitioner's motion for relief from judgment on September 8, 2008. The limitation period resumed running the next day, September 9, 2008. At the time, 164 days had run on the period of limitation and 201 days remained. The limitation period expired on March 28, 2009, but Petitioner filed his habeas petition more than a year and a half later, on October 27, 2010.[2] His habeas petition is therefore untimely unless equitable tolling is appropriate.

## B. Equitable Tolling

The habeas statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, --- U.S. ----, 130 S. Ct. 2549, 2560 (2010). The petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005)). The decision must be made on a case-by-case basis, taking into account specific circumstances that

---

[2] Pursuant to the "prison mailbox rule," the Court deems the petition filed on the date that Petitioner submitted his pleading to prison officials for forwarding to the Court. *Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385 (1988); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Petitioner alleges in a certificate of service that he mailed his petition for writ of habeas corpus to this Court on October 27, 2010. The Court therefore deems the petition filed on October 27, 2010, even though the Clerk of the Court received it and filed it on November 2, 2010.

7

might warrant relief. *Id.*

Even if the Court were to assume that Petitioner pursued his claims diligently, he has not shown that some extraordinary circumstance prevented him from filing a timely habeas petition. Petitioner appears to allege that state officials interfered with his ability to file a timely appeal with the Michigan Court of Appeals on collateral review by not making copies for him in a timely manner. He claims that he requested the copies on August 22, 2009, and the record indicates that he mailed his application to the Michigan Court of Appeals on September 21, 2009. The trial court, however, denied Petitioner's post-conviction motion almost a year before Petitioner asked state officials to make copies for him to include with his appellate application. Petitioner could have prepared his appellate materials sooner with the expectation that there might be a delay in making copies and mailing his application for leave to appeal. *See Alexander v. Schriro*, 312 F. App'x 972, 975 (9th Cir. 2009) (short delay in access to a copy machine did not warrant equitable tolling of the limitations period, where habeas petitioner had a year to prepare and file his petition). Furthermore, the alleged failure to provide copies occurred during state collateral proceedings. Petitioner has not alleged any circumstance that prevented him from filing a timely habeas corpus petition in federal court. He could have filed his habeas petition and moved to stay the petition while he pursued state court remedies.

Although the statute of limitations can be equitably tolled for a credible claim of actual innocence, *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005), a petitioner must support his claim of innocence with "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that

8

was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). The petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329, 115 S. Ct. at 868. Petitioner has not supported his habeas petition with new evidence. Nor has he made a credible showing of actual innocence. The Court finds no grounds justifying equitable tolling of the limitation period.

### III. Conclusion

Petitioner filed his habeas petition more than one year after his convictions became final, and he has failed to establish grounds for equitable tolling of the limitations period. The Court therefore concludes that the petition must be dismissed as untimely.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). Reasonable jurists would not debate the correctness of the Court's procedural ruling. The Court therefore declines to issue Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the State's motion for summary judgment and dismissal of

9

the habeas petition is **GRANTED**;

      **IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability;

      **IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed *in forma pauperis* in the district court.  See Fed. R. App. P. 24(a)(3).

      s/PATRICK J. DUGGAN
      UNITED STATES DISTRICT JUDGE

Dated: February 28, 2012

Copies to:

Joseph Palmer, #392289
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI 49784

Andrea M. Christensen, A.A.G.